**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CREDIT CARD FRAUD CONTROL CORPORATION,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 3:14-CV-03262-M** |
| | § | |
| **MAXMIND, INC.,** | § | |
| **Defendant.** | § | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Defendant MaxMind, Inc. ("MaxMind") file this its opposition to Plaintiff Credit Card Fraud Control Corporation's ("CCFCC") Voluntary Motion to Dismiss, Docket No. 54, as follows:

## I. INTRODUCTION

In September 2014, CCFCC filed suit against MaxMind for infringement of U.S. Patent No. 8,630,942 B2 ("the '942 patent"). After casting a shadow over MaxMind's accused products and dragging MaxMind through this legal battle for the past 13 months -- including *Markman* briefing -- CCFCC seeks to simply dismiss and walk away from the entire proceeding. The timing of CCFCC's motion should not be lost on the Court. CCFCC offers its proposed dismissal after the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("USPTO) instituted Covered Business Method Patent Review ("CBM") CBM2015-00094, on September 11, 2015, in which the PTAB found that all claims (1-30) of the '942 patent are more likely than not directed to patent-ineligible subject matter under 35 U.S.C. §101.

Under these circumstances, CCFCC's motion to dismiss should be denied, or at a minimum any dismissal should be conditioned upon MaxMind having an opportunity to pursue an award of attorneys' fees, costs, and/or sanctions.

## II. ARGUMENTS AND AUTHORITIES

### A. Plaintiff's Claims Should Not Be Dismissed Unconditionally

Federal Rule of Civil Procedure 41(a)(2) allows a plaintiff to dismiss its case only by court order and only "on terms the court considers proper." Fed. R. Civ. P. 41(a)(2). "The primary purpose of Rule 41(a)(2) is to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002) (internal citations omitted). Generally, motions for voluntary dismissal are outright denied only in the face of plain legal prejudice. *See id.*

Plain legal prejudice is evident in at least three situations: (1) when dismissal would deprive the opposing party of an otherwise-available defense, (2) when dismissal is "at a late stage" in the litigation, or (3) when a party "seeks to avoid an imminent adverse ruling." *Gulf Coast Marine & Assocs., Inc. v. Hercules 2505*, No. 1:12-CV-342, 2013 WL 1898401, at *2 (E.D. Tex. Apr. 16, 2013), *report and recommendation adopted* 2013 WL 1899789 (E.D. Tex. May 7, 2013); *Hancock v. Chicago Title Ins. Co.*, No. 3:07-CV-1441-D, 2010 WL 3766695, at *2 (N.D. Tex. Sept. 28, 2010); *see also Radiant Tech. Corp. v. Electrovert USA Corp.*, 122 F.R.D. 201, 203-04 (N.D. Tex. 1988) ("Outright dismissal should be refused . . . when a plaintiff seeks to circumvent an expected adverse result."). Courts rely on many factors to determine whether dismissal will prejudice defendants, some of which are "the timing of the plaintiff's motion and the efforts already expended in the litigation, including the pleadings, discovery, hearings, and prior decisions in the litigation adverse to plaintiff's position." *Texas Midstream Gas Servs., L.L.C. v. Grand Prairie*, No. 3:08-CV-1724-D, 2010 WL 3565232, at *2 (N.D. Tex. Sept. 8, 2010); *see also Chavez v. Dunlop, Ltd.*, No. 1:09-CV-798, 2011 WL 1641972, at *2 (E.D. Tex. Apr. 13, 2011) (considering expenses already incurred by the defendant, including filing an answer, participating in Rule 26(f)

conference, exchanging written discovery, and taking at least one deposition, as well as the plaintiff's insufficient explanation of the need to take a dismissal).

In this case, MaxMind will suffer plain legal prejudice if CCFCC's motion for dismissal is granted unconditionally. MaxMind has incurred great expense in fees, costs, and time by responding to and defending against CCFCC's claims of infringement. CCFCC did not "volunteer" to forgo its claims until after the CBM was instituted. In essence, the PTAB decision instituting the CBM foreshadowed an "imminent adverse ruling" to CCFCC -- just from another forum. In fact, on December 3, 2015, the day before the Patent Owner's Response was due in the CBM proceeding, CCFCC notified the PTAB that it would not be filing a Patent Owner's Response and instead requested permission to file a Request for Adverse Judgment. Appx. 002.[1] In other words, after forcing MaxMind to incur great expense in fees, costs and time to defend against CCFCC's claims of infringement, and the day before CCFCC was required to file a response supporting the validity of its patent, CCFCC now admits that the claims of its patent are invalid.

B. MaxMind Is the Prevailing Party

Even if the Court is inclined to grant the dismissal, it should "impose[] terms and conditions . . . in order to protect" MaxMind. *Cranford v. Morgan So. Inc.*, 333 Fed. Appx. 852, 855 (5th Cir. 2009); *see Elbaor*, 279 F.3d at 317-18; *Texas Midstream Gas Servs.*, 2010 WL 3565232, at *3-*5 (N.D. Tex. Sept. 8, 2010) (imposing conditions to the dismissal -- assessing costs and limiting the jurisdiction for refiling -- even though the situation did not amount to "plain legal prejudice" to the defendant); *Bramlett v. Medical Protective Co.*, 3:09-CV-1596-D, 2010 WL 1491422, at *7 (N.D. Tex. Apr. 13, 2010) (ordering plaintiffs to pay defendant's costs and fees even when defendant could not prove plaintiffs were seeking dismissal to avoid adverse result); *Radiant Tech. Corp.*, 122

[1] Citations to the Appendix in Support of Defendant's Response in Opposition to Motion to Dismiss, filed concurrently herewith, are cited as "Appx." followed by the applicable page number.

F.R.D. at 204-05 (conditioning dismissal upon payment of appropriate fees and costs even though defendant did not satisfy factors for denying dismissal outright).

Here, at a minimum, the Court should declare MaxMind the prevailing party. "[A]s a matter of patent law, [a] dismissal with prejudice, based on [a] covenant [not to sue] and granted pursuant to [a] district court's discretion under Rule 41(a)(2), has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties . . . " to make the defendant the prevailing party. *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006); *see also Pragmatus Telecom LLC v. Newegg, Inc.*, ___ Fed. Appx. ___, 2015 WL 4603727, at *3 (Fed. Cir. July 31, 2015) (holding that a defendant that was dismissed with prejudice is the prevailing party). MaxMind's "prevailing party status is not predicated on whether [CCFCC] filed a Rule 41(a)(2) motion to dismiss with prejudice at the outset but is sufficiently based on its having filed a covenant not to sue with the court to end the litigation, resulting in a dismissal with prejudice." *Highway Equip.* at 1035-36.

MaxMind's prevailing party status should extend to the purposes of 35 U.S.C. § 285, and the Court should maintain jurisdiction to hear the grounds for potential awards to MaxMind under (among other bases) Federal Rules of Civil Procedure 11 and/or the Court's inherent power, if the parties are not able to otherwise resolve these issues. *Cf. Ericsson, Inc. v. Harris Corp.*, No. 3:08-CV-2903-M, 2001 WL 257838, at *8 (N.D. Tex. March 12, 2001). A similar result was reached in at least two Eastern District of Texas cases: *TQP Development, LLC v. Branch Banking & Trust Co.*, No. 2:12-CV-55, 2014 WL4749073 (E.D. Tex. Sept. 22, 2014), and *InterForm, Inc. v. Staples, Inc.*, No. 2:13-CV-281, Docket No. 76 (E.D. Tex. Oct. 20, 2014). For example, in *TQP*, the plaintiff sought voluntary dismissal after the accused infringer provided discovery responses which significantly decreased the value of the plaintiff's claims. The court gave prevailing party status to

the defendant and allowed it an opportunity to seek recovery of fees before entering an order of dismissal. *Id.* at *1-*2. In the instant case, CCFCC claims the "PTAB's institution decision" as well as information regarding "damages at issue" has caused its change of heart. (*See* Motion, Dkt. No. 54, at 1). In reality, MaxMind is the sole party that stood its ground and would not pay an entity using litigation to extort its resources.[2]

In fact, very early in this case MaxMind informed CCFCC that the claims of the patent in suit were invalid, at least in part, because it claimed non-patentable subject matter, and MaxMind requested a dismissal. Rather than dismissing MaxMind at that time, CCFCC used the threat of protracted and expensive litigation to attempt to extract a monetary settlement on a patent it knew or should have known was invalid. Indeed, one day prior to the day that it would have to file its Patent Owner's Response in the CBM proceeding in support of the validity of its patent, CCFCC instead acknowledged that the claims of its patent are invalid by requesting entry of an adverse judgment. Appx. 002. CCFCC's tactics should not be rewarded, and particularly not at the very moment when the merits of the asserted patent have to be proven. *See Ericsson*, 2001 WL 257838, at *5 (citing Federal Circuit's recognition that "a litigation strategy may justify finding that a case is exceptional even though individual or specific examples of vexatious conduct may be tenuous) (internal citations omitted).

Here, CCFCC's counsel described the '942 patent's claims as "broad" and "rooted in computer technology." (*See* Transcript of May 11, 2015 Rule 16 Conference at 3:24-4:4). Counsel characterized the purported inventions of the '942 patent as "the use of the IP address in connection with fraud detection in Internet transactions." (*Id.*). CCFCC brought this case on such claims despite the fact that the Federal Circuit has found claims of a similar nature invalid. *See*

[2] CCFCC originally sued four other defendants at or around the same time it filed the instant suit. All of those cases were resolved by April 1, 2015, prior to the Rule 16 Conference being held in this case.

*Cybersource Corp v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-77 (Fed. Cir. 2011) (holding that claims directed to "method or system for detecting credit card fraud which utilizes information relating credit card transactions to particular "Internet address[es]" were not patentable subject matter). The same rationale applied by the Court in *Cybersource* was at least, in part, why the PTAB instituted the CBM proceeding with its determination that all claims of the '942 patent were more likely than not directed to patent-ineligible subject matter. Indeed, CCFCC now admits that the claims of the '942 patent are invalid with its request to the PTAB for entry of an adverse judgment. Appx. 002. CCFCC's desire to walk away from this case now calls into serious question whether CCFCC ever had a basis at all for pursuing its claims, particularly when its behavior demonstrates all it wanted to pursue was early licensing fees based on the cost to defend a patent case such as this. *See Eon-Net, LP v. Flagstar Bancorp*, 653 F.3d 1314, 1328-29 (Fed. Cir. 2011) (affirming district court's determination that plaintiff acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement).

C. MaxMind's Counterclaims Should Remain Live

MaxMind recognizes that a dismissal with prejudice of CCFCC's claims coupled with an appropriate covenant not to sue may render MaxMind's counterclaims seeking declaratory judgments of non-infringement and invalidity moot. Moreover, in light of CCFCC's recent request for entry of an adverse judgment, MaxMind recognizes that it will have essentially prevailed on its declaratory judgment of invalidity. Given, however, that the Court should not grant an unconditional dismissal with prejudice as to CCFCC's claims of infringement, for the reasons set forth above, the Court should still maintain subject matter jurisdiction over MaxMind's counterclaims. MaxMind's counterclaims should not be dismissed until all issues as to prevailing party and recovery of monetary amounts are disposed of by the Court.

## III. CONCLUSION

CCFCC's motion to dismiss is a transparent attempt to avoid any consequence of its failure to support its claims of infringement. MaxMind will be subjected to plain legal prejudice if not allowed to receive prevailing party status and to pursue a potential recovery of the fees, costs, and expenses it was forced to incur throughout the pendency of this case. As such, the Court should deny an unconditional dismissal of CCFCC's claims and permit MaxMind to seek the recovery to which it is rightfully entitled.

Dated: December 4, 2015

Respectfully submitted,

**ANDREWS KURTH LLP**

By: *_/s/ Tonya M. Gray_*

Anthony Son
AnthonySon@andrewskurth.com
1350 I Street, NW
Suite 1100
Washington, DC 20005
Telephone: (202) 662-2784
Facsimile: (202) 974-9524

Tonya M. Gray
Texas Bar No. 24012726
tonyagray@andrewskurth.com
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4400
Facsimile: (214) 659-4401

**ATTORNEYS FOR DEFENDANT MAXMIND, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 4, 2015, the foregoing document was electronically submitted with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to all counsel of record.

*_/s/ Tonya M. Gray_*