**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CREDIT CARD FRAUD CONTROL** | § | |
| **CORPORATION,** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 3:14-CV-03262-M** |
| | § | |
| **MAXMIND, INC.,** | § | |
|     **Defendant.** | § | |

## DEFENDANT'S MOTION FOR EXCEPTIONAL CASE DETERMINATION AND ATTORNEYS' FEES AND COSTS

**ANDREWS KURTH LLP**

Anthony Son
AnthonySon@andrewskurth.com
1350 I Street, NW
Suite 1100
Washington, DC  20005
Telephone:  (202) 662-2784
Facsimile:  (202) 974-9524

Tonya M. Gray
Texas Bar No. 24012726
tonyagray@andrewskurth.com
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:  (214) 659-4400
Facsimile:  (214) 659-4401

**ATTORNEYS FOR DEFENDANT**
**MAXMIND, INC.**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................ 1

II.    FACTUAL BACKGROUND ...................................................................................... 1

III.   ARGUMENT AND AUTHORITIES ......................................................................... 5

   A.   MaxMind Is A Prevailing Party ........................................................................ 5

   B.   Fees May Be Awarded the Prevailing Party in Exceptional Cases ................... 6

   C.   This Case Is Exceptional Because It Was Objectively Unreasonable to Believe
       the '942 Patent Was Valid and Enforceable ...................................................... 8

   D.   CCFCC's Strategy to File Suit and Extract Settlements Renders This
       Case Exceptional ............................................................................................ 10

   E.   Requiring CCFCC to Compensate MaxMind Is Further Justified as a Sanction
       Under the Court's Inherent Authority ............................................................. 12

IV.    CONCLUSION ......................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Actos (Pioglitazone) Prods. Liab. Litigation*,
2014 WL 2872299 (W.D. La. June 23, 2014) .......................................................12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. ___, 134 S. Ct. 2347 (2014) ................................................................10

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
393 F.3d 1378 (Fed. Cir. 2005)........................................................................ 7

*CyberSource v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011)......................................................................2, 8

*eDekka LLC v. 3balls.com, Inc.*,
Nos. 2:15-cv-541, 2:15-cv-585 JRG, 2015 WL 9225038 (E.D. Tex. Dec. 17,
2015) ..........................................................................................8, 9, 10, 11

*Eon-Net LP v. Flagstar Bancorp.*,
653 F.3d 1314 (Fed. Cir. 2011).................................................................7, 10, 12

*Ericsson, Inc. v. Harris Corp.*,
No. 3:08-CV-2903-M, 2001 WL 257838 (N.D. Tex. March 12, 2001) ...................................12

*Highway Equip. Co. v. FECO, Ltd.*,
469 F.3d 1027 (Fed. Cir. 2006)......................................................................5, 6

*Lumen View Tech., LLC v. Findthebest.com, Inc.*,
24 F.Supp.3d 329 (S.D.N.Y. 2014)....................................................................12

*Novartis Corp. v. Webvention Holdings LLC*,
No. CCB-11-3620, 2015 WL 6695158 (D. Md. Oct. 28, 2015).........................................7, 11

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
___ U.S. ___, 134 S. Ct. 1749 (2014)...........................................................6, 7, 10

*Pragmatus Telecom LLC v. Newegg, Inc.*,
___ Fed. App'x ___, 2015 WL 4603727 (Fed. Cir. July 31, 2015)......................................5

*SFA Sys., LLC v. Newegg, Inc.*,
793 F.3d 1344 (Fed. Cir. 2015).....................................................................6, 10

*Sorkin v. Universal Bldg. Prods. Inc.*,
   No. 1:08-CV-133, 2010 WL 519742 (E.D. Tex. Feb. 9, 2010)................................................7

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
   753 F.3d 1291 (Fed. Cir. 2014)............................................................................................7

*Summit Data Sys., LLC v. EMC Corp.*,
   No. CV 10-749-GMS, 2014 WL 4955689 (D. Del. Sept. 25, 2014) .......................................12

*Techradium, Inc. v. FirstCall Network*, *Inc.*,
   Nos H-13-2487, 13-2641, 2015 WL 862326 (S.D. Tex. Feb. 27, 2015)...................7, 8, 9, 11

*Vehicle Interface Tech., LLC v. Jaguar Land Rover North Am., LLC*,
   Nos. 12-1285-RGA, 14-339-RGA, 2015 WL 9462063 (D. Del. Dec. 28, 2015).....................7

**Statutes**

35 U.S.C. § 101 ............................................................................................................. *passim*

35 U.S.C. § 285 ............................................................................................................. *passim*

Defendant MaxMind, Inc. ("MaxMind") hereby moves pursuant to 35 U.S.C. § 285 and the Court's inherent authority for an order finding this to be an exceptional case and requiring Plaintiff Credit Card Fraud Control Corporation ("CCFCC") to pay MaxMind's reasonable attorneys' fees and nontaxable costs in an amount to be determined after further briefing.  In support, MaxMind states as follows:

## I.        INTRODUCTION

CCFCC's game plan for this case has been made clear: file suit to obtain a quick settlement, and dismiss the case if it would need to prove anything.  Such conduct should not be condoned.  To deter such future behavior, MaxMind requests that the Court exercise its discretion to require CCFCC to pay the fees and costs that MaxMind was forced to incur litigating CCFCC's baseless claims.

## II.        FACTUAL BACKGROUND

CCFCC filed its Original Complaint for Patent Infringement on September 10, 2014, alleging infringement of U.S. Patent No. 8,630,942 B2 ("the '942 patent").  CCFCC accused MaxMind of infringement "by using an Internet address (*e.g.*, an IP address) to identify, manage, and/or prevent fraudulent Internet transactions."  (Dkt. No. 1 at ¶10).  MaxMind is an industry-leading provider of IP intelligence and online fraud detection tools.  (Appx. 002).[1]  One of the services it provides to customers is minFraud.  The minFraud service is used to screen millions of e-commerce transactions and account registrations a month.  (Appx. 002).  By filing this lawsuit, CCFCC cast a shadow on MaxMind and its minFraud service.  (Appx. 002).

---

[1] Citations to the Appendix in Support of Defendant's Motion for Exceptional Case Determination and Attorneys' Fees and Costs, filed concurrently herewith, are cited as "Appx." followed by the applicable page number.

After receiving an initial settlement demand from CCFCC, MaxMind's counsel informed CCFCC that the claims of the '942 patent are invalid under 35 U.S.C. § 101 for claiming non-statutory subject matter.  By letter dated November 21, 2014, from Anthony Son to Edward Nelson, Maxmind directed CCFCC to the decision in *CyberSource v. Retail Decisions*, *Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011), in which the Federal Circuit affirmed the district court's grant of summary judgment that the claims directed to the abstract idea of detecting credit card fraud using an Internet address and credit card transaction information were invalid under § 101 -- claims of the same nature as those found in the '942 patent.  (Appx. 013-14).  MaxMind questioned what good faith basis CCFCC could have to bring suit and assert that the '942 patent claims were valid and enforceable in light of the *Cybersource* decision as well as recent Supreme Court authority on § 101 patentable subject matter.  (Appx. 013-14).  Nonetheless, in an effort to avoid the expense and investment necessary to defend a patent suit, MaxMind sought to have a discussion among the parties' business personnel to explore whether resolution of the dispute was feasible.  (Appx. 013-14).  In response to Mr. Son's letter, by email dated November 24, 2014, Ryan Griffin, counsel for CCFCC, directed MaxMind to contact Holly Hernandez of Acacia Research Corporation ("Acacia").  (Appx. 016).  CCFCC is a subsidiary of Acacia.  (Appx. 022, 025, 027, 030).  Acacia, including through its subsidiaries, is a prolific litigant that has been called the "mother of all patent trolls."  (Appx. 166).  In 2013, it was declared the "most litigious" non-practicing entity in the U.S. and remained the "most litigious NPE" in 2014.  (Appx. 178, 186).

On November 25, 2014, Thomas Mather, Chief Executive Officer of MaxMind, spoke with Holly Hernandez of Acacia to discuss potential resolution of the lawsuit.   (Appx. 002-03).  MaxMind offered to make a charitable donation on behalf of CCFCC in exchange for dismissal of the litigation.  (Appx. 002-03).  From MaxMind's perspective, its proposed resolution would have

saved both parties from a protracted legal battle, would have the potential to generate positive public-relations for CCFCC or Acacia, and would have been consistent with MaxMind's policies of helping the community while not supporting business practices with which it disagrees. (Appx. 003). CCFCC was not interested in a resolution of the nature Mr. Mather proposed.  (Appx. 003).

On March 3, 2015, MaxMind submitted a Post-Grant Review of a Covered Business Method Patent ("CBM") petition to the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("USPTO).  (Appx. 032-86).  In the CBM petition, MaxMind sought to cancel under 35 U.S.C. §101 claims 1-30 of the '942 patent for lack of patentable subject matter.  (Appx. 032-86).  Thereafter, MaxMind moved to stay the litigation in favor of the CBM proceeding; CCFCC opposed any such stay.  (Dkt. Nos. 17, 25).

On April 28, 2015, MaxMind's CEO Mr. Mather again contacted Ms. Herndandez at Acacia to inform her of the impact the expense caused by the litigation had on MaxMind's ability to support charities and to explore ways to mitigate this impact.  (Appx. 003).  Ms. Hernandez required MaxMind revenue information before being able to respond.  (Appx. 006-07).  Not only did CCFCC continue to pursue its meritless claims, it amended its complaint to add allegations of indirect infringement.  (Dkt. No. 36).

The parties proceeded with a Rule 16 conference before the Court, compliance with Amended Order No. 62 contention requirements, and discovery -- including MaxMind having to respond to requests for production and interrogatories served by CCFCC.  They also engaged in claim construction exchanges per Amended Order No. 62 and filed both opening and responsive claim construction briefs.  (*See* Docket Nos. 43, 45, 47, 48).

On September 11, 2015, the PTAB found that all claims (claims 1-30) of the '942 patent were directed to unpatentable subject matter under 35 U.S.C. § 101 and instituted CBM review.

(Appx. 088-104).   After a meet and confer, CCFCC ultimately agreed to stay the district court litigation in view of the CBM institution, and the parties filed a joint motion to stay on September 14, 2015.  (Dkt. No. 50).  The Court granted the joint motion and stayed this case in favor of the CBM proceeding on September 15, 2015.  (Dkt. No. 52).

Thereafter, and as CCFCC's deadline to defend the validity of the '942 patent before the PTAB was approaching, CCFCC sought to settle this lawsuit and significantly reduced their settlement demand, while still seeking payment from MaxMind.   (Appx. 018-20).   MaxMind refused and countered that CCFCC should reimburse MaxMind for its expenses incurred to defend against an objectively unreasonable lawsuit.  (Appx. 018-20).  Having exhausted its attempts to extract a monetary payment from MaxMind, CCFCC then sought a "walk away," asking MaxMind to agree to a dismissal of this case.  The parties were unable to reach agreement as to CCFCC's proposal, and CCFCC filed an opposed motion to dismiss on November 13, 2015.  (Dkt. No. 54). Tellingly, CCFCC then acknowledged to the PTAB that the claims of the '942 patent were invalid and requested entry of an adverse judgment in the CBM proceeding.  (Appx. 106-09).  This admission by CCFCC occurred on December 9, 2015 -- one day prior to the day that it would have to file its Patent Owner's Response in the CBM proceeding.  The PTAB entered a Judgment and Final Written Decision cancelling all claims of the '942 patent on December 17, 2015.  (Appx. 111-14).  The Court entered an Order of Dismissal of this case on December 29, 2015, but specifically retained jurisdiction to hear this motion for attorneys' fees.  (Dkt. No. 60).

This suit filed against MaxMind is not the only infringement action filed by CCFCC to enforce the '942 patent.  In this Court, it also brought suit against Chase Paymentech Solutions LLC (No. 3:14-cv-2617-M), First Data Corporation (No. 3:14-cv-2619-M), Elavon Inc. (No. 3:14-cv-3260-M), and TCSP Inc. (No. 3:14-cv-3264-N).   All of those cases were resolved through

settlement prior to the Rule 16 Conference being held in any respective case. In fact, through either company press releases or 8K filings with the Securities Exchange Commission, Acacia publicly reported that its subsidiary CCFCC had settled each of those four matters (Appx. 022, 025, 027, 030). CCFCC also previously filed two suits to enforce U.S. Patent No. 8,229,844 B2 (the "'844 patent"): *Credit Card Fraud Control Corporation v. Paypal, Inc.*, No. 9:2012-cv-81143, and *Credit Card Fraud Control Corporation v. Cybersource Corporation*, No. 9:2012-cv-81141, both in the United States District Court for the Southern District of Florida, West Palm Beach Division. Both the '844 patent and the '942 patent are divisions of the same continuation application, No. 09/432/811, now U.S. Patent No. 7,555,548, and both are entitled "Method of Billing a Purchase Made Over a Computer Network." (Appx. 116). The lawsuits against PayPal and Cybersource were transferred to the United States District Court for the Northern District of California, Oakland Division. Both CCFCC suits to enforce the '844 patent were also resolved early and prior to the case management conference.[2]

## III.       ARGUMENT AND AUTHORITIES

### A.       MaxMind Is A Prevailing Party

The Court dismissed CCFCC's claims against MaxMind with prejudice. (Dkt. No. 60). "[A]s a matter of patent law, [a] dismissal with prejudice, based on [a] covenant [not to sue] and granted pursuant to [a] district court's discretion under Rule 41(a)(2), has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties . . . " to make the defendant the prevailing party. *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006); *see also Pragmatus Telecom LLC v. Newegg, Inc.*, ___ Fed. App'x ___,

---

[2] The Stipulation and Order Dismissing All Claims in the PayPal lawsuit involved CCFCC dismissing all claims against PayPal with prejudice along with a covenant not to sue, but PayPal's claims against CCFCC were dismissed without prejudice. This stipulation strongly suggests that CCFCC entered into a "walk away" similar to what they attempted to do with MaxMind. (Appx. 158-160).

2015 WL 4603727, at *3 (Fed. Cir. July 31, 2015) (holding that a defendant that was dismissed with prejudice is the prevailing party).  MaxMind's "prevailing party status is not predicated on whether [CCFCC] filed a Rule 41(a)(2) motion to dismiss with prejudice at the outset but is sufficiently based on its having filed a covenant not to sue with the court to end the litigation, resulting in a dismissal with prejudice." *Highway Equip.* at 1035-36; *see* Dkt. No. 54.  Moreover, CCFCC has agreed that MaxMind be provided the opportunity to seek attorneys' fees.  (Dkt. No. 57 at 1).

      B.    <u>Fees May Be Awarded the Prevailing Party in Exceptional Cases</u>

      "The Court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  The Supreme Court has held that an exceptional case for purposes of section 285 "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, ___ U.S. ___, 134 S. Ct. 1749, 1756 (2014).  Factors to be considered in determining whether a case is exceptional include "objective unreasonableness" in the legal components of the case and "considerations of compensation and deterrence."  *Id.* at 1756 n. 6.  Further, the Court "must consider whether the case was litigated in an unreasonable manner as part of its exceptional case determination."  *SFA Sys., LLC v. Newegg, Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015).  A "pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285."  *Id.* at 1350.  Moreover, even in cases where there is no litigation misconduct, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a

fee award." *Octane Fitness*, 124 S. Ct. at 1757; *see also Novartis Corp. v. Webvention Holdings LLC*, No. CCB-11-3620, 2015 WL 6695158, *2 (D. Md. Oct. 28, 2015); *cf. Vehicle Interface Tech., LLC v. Jaguar Land Rover North Am., LLC*, Nos. 12-1285-RGA, 14-339-RGA, 2015 WL 9462063, *4 (D. Del. Dec. 28, 2015) (finding case exceptional from point when Defendants presented evidence of asserted patent's invalidity).

Cases have been determined exceptional and fees awarded "when a party advances arguments that are particularly weak" or seek to relitigate issues already decided. *Techradium, Inc. v. FirstCall Network, Inc.*, Nos H-13-2487, 13-2641, 2015 WL 862326, at *5 (S.D. Tex. Feb. 27, 2015) (internal citations omitted). Factors for the Court to consider include "whether a party knew or willfully ignored evidence of the claims' meritlessness; whether the meritlessness could have been discovered by basic pretrial investigation; or whether the meritlessness was made clear early in the litigation." *Id.* at *6.

Courts also consistently have deemed cases exceptional under section 285 in instances involving failure to conduct adequate pre-filing investigation. *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005), *abrogated by Octane Fitness*, 134 S. Ct. 1749 (2014); *Eon-Net LP v. Flagstar Bancorp.*, 653 F.3d 1314, 1329 (Fed. Cir. 2011) (affirming fee award under section 285 against plaintiff for filing a lawsuit based on objectively unreasonable positions); *Sorkin v. Universal Bldg. Prods. Inc.*, No. 1:08-CV-133, 2010 WL 519742, *3-*4 (E.D. Tex. Feb. 9, 2010) (finding case to be exceptional because litigation was objectively baseless and pursued in subjective bad faith). "A patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1302 (Fed. Cir. 2014).

C.    This Case Is Exceptional Because It Was Objectively Unreasonable to Believe the
      '942 Patent Was Valid and Enforceable.

Here, the inherent weakness of the '942 patent should have been assessed well-before suit

was filed. As described by CCFCC's counsel, the '942 patent is directed to "the use of the IP

address in connection with fraud detection in Internet transactions." (*See* Transcript of May 11,

2015 Rule 16 Conference at 3:24-4:4). CCFCC chose to accuse MaxMind of infringement "by

using an Internet address (*e.g.*, an IP address) to identify, manage, and/or prevent fraudulent

Internet transactions." (Dkt. No. 1 at ¶10). In *Cybersource*, the Federal Circuit had already

affirmed that claims directed to the abstract idea of detecting credit card fraud using an Internet

address and credit card transaction information were invalid under § 101. 654 F.3d at 1372-77.

Despite the fact that a proper pre-suit investigation into the validity and enforceability of the '942

patent should have prevented this case from ever being filed, CCFCC filed this suit and others

seeking settlement payments. In *TechRadium*, the plaintiff chose to pursue patent claims despite

the fact that a prior claim construction decision on a parent patent was contrary to the plaintiff's

infringement positions. 2015 WL 862326, at *3. The court determined that using litigation as

"merely a vehicle to relitigate prior, clearly rejected, positions" strongly supported a finding that

the case was exceptional. *Id.* at *7. CCFCC essentially took the same course in choosing to pursue

patent claims of the same nature found to lack patentable subject matter in *Cybersource*.

        This case is no different than another recent opinion where a party's decision to enforce a

patent inherently weak under § 101 resulted in an exceptional case finding and an award of fees. In

*eDekka LLC v. 3balls.com, Inc.*, Nos. 2:15-cv-541, 2:15-cv-585 JRG, 2015 WL 9225038 (E.D.

Tex. Dec. 17, 2015), the asserted patent was invalidated under § 101. Judge Gilstrap found the

patent was "demonstrably weak on its face, despite the initial presumptions created when [the]

patent issued by the PTO." *Id.* at *2. eDekka's position caused the court "to question whether [it]

engaged in a reasonable and thorough pre-suit investigation regarding the § 101 standard and relevant authority before filing" suit. *Id.* at *4. "[R]ather than acknowledging the inherent weaknesses" of the asserted patent, the plaintiff "proffered completely untenable arguments" in response to a § 101 challenge. *Id.* CCFCC behaved the same.

Setting aside what an adequate pre-suit investigation should have revealed, at a minimum the § 101 invalidity of the '942 patent was known to CCFCC no later than Mr. Son's November 21, 2014 letter (within two months of suit being filed). CCFCC continued to prosecute the case, even though the "meritlessness" of the '942 patent "was made clear early in the litigation." *See TechRadium*, 2015 WL 862236 at *6. The § 101 analysis yielding the '942 patent unenforceable was reinforced to CCFCC when MaxMind filed the CBM petition in early March 2015. Moreover, during the court ordered Scheduling Conference, after counsel for CCFCC described the broad scope of the '942 patent in nearly identical terms that the Federal Circuit in *Cybersource* held was an unpatentable abstract idea, MaxMind again pointed out how the '942 patent could not be valid and enforceable. (*See* Transcript of May 11, 2015 Rule 16 Conference at 6:14-7:5). CCFCC not only continued to pursue this case, it actually amended its complaint to *add* new grounds for alleged infringement. (Dkt. No. 36). The PTAB instituted the CBM proceeding on September 11, 2015, finding all claims (1-30) of the '942 patent are more likely than not directed to patent-ineligible subject matter under 35 U.S.C. §101. (Appx. 088-104). CCFCC agreed to stay this case but did not seek to dismiss it for over another month and a half. Yet at the very point when the '942 patent had to be defended to the PTAB, the invalidity of the '942 patent was conceded through a request for an adverse judgment. (Appx. 106-109). CCFCC attempts to distance itself from this concession by claiming the patent owner is a completely different entity from CCFCC. (Dkt. No. 57 at 3). Yet, for CCFCC to have standing in this matter, it has to be in privity with the patent

owner.  Moreover, CCFCC is an Acacia subsidiary and Acacia touts on its website it has partnered with the patent owner. (Appx. 265).  Not surprisingly, the same counsel represented the Patent Owner in the CBM proceeding that represents CCFCC here.  CCFCC's lack of intent to test the merits of the '942 patent is pertinent to finding this case exceptional.  *SFA Sys.*, 793 F.3d at 1350. And, just as in *eDekka*, CCFCC prosecuting the '942 patent in light of *Cybersource*, as well as *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. ___, 134 S. Ct. 2347 (2014), was nothing short of unreasonable.

      D.      CCFCC's Strategy to File Suit and Extract Settlements Renders This Case Exceptional

CCFCC's behavior in this case demonstrates one simple fact:  it wanted to extract settlement payments, not prove any purported merit to its claims.  Four defendants in sister suits before this Court paid an early settlement fee, just as Cybersource and PayPal were dismissed in the earliest stages in prior litigation brought by CCFCC on a patent in the same family as the '942 patent.  MaxMind is the sole defendant who made the expensive decision to defend against CCFCC's frivolous claims rather than pay an extorted license fee.  Even before *Octane Fitness*, such litigation strategies were known to lead to an exceptional case finding or sanctions.  *See Eon-Net*, 653 F.3d at 1328-29 (affirming district court's determination that plaintiff acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement).  The Supreme Court reiterated that courts should take into account "the need in particular circumstances to advance considerations of compensation and deterrence."  *Octane Fitness*, 134 S. Ct. at 1756 n.6.  A party "act[ing] with the goal of 'exploiting the high cost to defend complex litigation' to extract 'nuisance value settlements' from defendants" can cause a case to be found exceptional.  *eDekka*, 2015 WL 9225038, at *4 (citing *Eon-Net*).  Because MaxMind would not succumb to

CCFCC's demands to pay a settlement fee, CCFCC's allegations cast a shadow on MaxMind and its minFraud service for over fourteen months.

CCFCC attempts to appear innocent on such litigation strategies by pointing to the fact that it only filed five suits.  (Dkt. No. 57 at 4).  But CCFCC is Acacia -- one of the most prominent non-practicing entities whose entire business model is to pursue licensing fees for its patent portfolio including through hundreds, if not thousands, of lawsuits.  (Appx. 212, 229).  It was Acacia that CCFCC's counsel directed MaxMind's CEO to when MaxMind requested a discussion among business personnel.  (Appx. 016).  It was Acacia who touted settlements in the other four suits filed by CCFCC before this Court.  (Appx. 022, 025, 027, 030).  Ironically, CCFCC wants this Court to believe that MaxMind is "vexatious" and characterizes MaxMind enforcing its rights -- ***after it was sued by CCFCC*** -- as "continued harassment of CCFCC."  (Dkt. No. 57 at 3-4).  Acacia and CCFCC chose to file suit on an inherently unenforceable patent.  Acacia and CCFCC chose to continue to prosecute that suit after the §101 deficiencies were made clear in November 2014 and again in March 2015 when the CBM petition was filed.  (Appx. 013-14, 032-86).  And it was Acacia that thereafter insisted on obtaining revenue numbers from MaxMind in its efforts to continue to extract a settlement payment.  (Appx. 006-07).  Indeed, even after the CBM was initiated and the invalidity of the '942 patent confirmed, at least preliminarily, CCFCC (and Acacia) continued to attempt to extract a nuisance value settlement.  (Appx. 018-20).  Such behavior has been found to deem a case exceptional.  *eDekka*, 2015 WL 9225038, at *4; *Techradium*, 2015 WL 862326 at *8 (finding case exceptional and plaintiff's litigation conduct "designed to increase the cost to the defendants and to pressure to settle");[3] *Novartis*, 2015 WL

---

[3] Fearing that CCFCC was attempting to drive up MaxMind's costs to defend itself, MaxMind again reached out to Acacia on or about April 28, 2015.  (Appx. 003).

6669158, at *3-*4 (finding case exceptional and awarding fees where suits used to demand license fees at a cost intended to induce quick settlements); *Summit Data Sys., LLC v. EMC Corp.*, No. CV 10-749-GMS, 2014 WL 4955689, at *4-5 (D. Del. Sept. 25, 2014) (finding practice of extracting settlements for much less than the case could cost to litigate supported finding of exceptionality); *cf. Ericsson, Inc. v. Harris Corp.*, No. 3:08-CV-2903-M, 2001 WL 257838, at *5 (N.D. Tex. March 12, 2001) (citing Federal Circuit's recognition that "a litigation strategy may justify finding that a case is exceptional even though individual or specific examples of vexatious conduct may be tenuous) (internal citations omitted)).  The court in *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F.Supp.3d 329 (S.D.N.Y. 2014), stated it well:

> The "deterrence" prong of the *Octane Fitness* test also weighs in favor of an exceptional case finding. The boilerplate nature of [plaintiff's] complaint, the absence of any reasonable pre-suit investigation, and the number of substantially similar lawsuits filed within a short time frame, suggests that [plaintiff's] instigation of baseless litigation is not isolated to this instance, but is instead part of a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation against even frivolous patent lawsuits. The need "to advance considerations of ... deterrence" of this type of litigation behavior is evident. *Octane Fitness*, 134 S. Ct. at 1756 n. 6.

*Id.* at 336 (internal citations omitted).  The same conclusion should be found here.  CCFCC's "appetitite for licensing revenue" should not be permitted to "overpower [its] and its counsel's obligation to file cases reasonably based in law and fact." *Eon-Net*, 653 F.3d at 1328.

E.   Requiring CCFCC to Compensate MaxMind Is Further Justified as a Sanction Under the Court's Inherent Authority

This is an exceptional case under 35 U.S.C. § 285 that warrants an award of attorney fees and costs.  Even further, the Court can award MaxMind its reasonable attorneys' fees and non-taxable costs as a sanction under its inherent authority.  *See, e.g., In re Actos (Pioglitazone) Prods. Liab. Litigation*, 2014 WL 2872299, at *12 (W.D. La. June 23, 2014) (citing *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1033 n.2 (5th Cir. 1990)).

## IV.      CONCLUSION

For the reasons set forth above, the Court should declare this an exceptional case under 35 U.S.C. § 285 and order CCFCC to pay MaxMind's reasonable attorneys' fees and non-taxable costs.  Upon such a finding, MaxMind requests the opportunity to then submit evidence as to the amount of fees it incurred.  Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B), MaxMind estimates that such fees are approximately $ 275,000.00.

Dated:  January 8, 2015

Respectfully submitted,


**ANDREWS KURTH LLP**

By:_____*/s/  Tonya M. Gray*_____
       Anthony Son
       AnthonySon@andrewskurth.com
       1350 I Street, NW
       Suite 1100
       Washington, DC  20005
       Telephone:  (202) 662-2784
       Facsimile:  (202) 974-9524

       Tonya M. Gray
       Texas Bar No. 24012726
       tonyagray@andrewskurth.com
       1717 Main Street, Suite 3700
       Dallas, Texas 75201
       Telephone:  (214) 659-4400
       Facsimile:  (214) 659-4401

**ATTORNEYS FOR DEFENDANT
MAXMIND, INC.**


## CERTIFICATE OF CONFERENCE

Counsel for Defendant conferred with counsel for Plaintiff on January 8, 2016 on the issues presented herein by telephone conference.  The undersigned counsel participated for Defendant MaxMind, Inc. and Mr. Anthony Vecchione participated for Plaintiff Credit Card Fraud Control Corporation.  The parties were unable to reach agreement, and Plaintiff opposes the relief sought in this Motion.

       _/s/ Tonya M. Gray_____

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 8, 2015, the foregoing document was electronically submitted with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to all counsel of record.

　　　　　　　　　　　　　　　　　　*/s/ Tonya M. Gray*